UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MITHAQ AL HUMRANI,

        Plaintiff,        Case No. 2:05-cv-203

v.        HON. ROBERT HOLMES BELL

RUDOLPH KLEEMAN,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Plaintiff, Mithaq Al Humrani, filed a claim against Defendant Rudolph Kleeman regarding his treatment while incarcerated in the Alger Maximum Correctional Facility. Plaintiff is of Iraqi descent, and claims that he was subjected to racial discrimination and harassment on the part of the Defendant. This behavior includes directing racial slurs at Plaintiff, shutting off water to Plaintiff's cell, badgering Plaintiff to kill himself, destroying Plaintiff's personal and legal property, interfering with Plaintiff's access to the typing room, and threatening to poison Plaintiff. As a result, Plaintiff asserts that he suffered emotional trauma that led to suicide attempts.

Defendant has filed a motion for summary judgment in accordance with Fed. R. Civ. P. 56 (Docket #10) and Plaintiff has filed a brief in response (Docket #15). Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing that there is an absence

of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-325. The nonmoving party cannot rest on its pleadings, but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). While the evidence must be viewed in the light most favorable to the nonmoving party, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). Ultimately, the Court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. I have reviewed the materials submitted by both the Plaintiff and the Defendant, and it is my recommendation that Defendant's motion for summary judgment be granted in part and denied in part.

Plaintiff's first claim is that he was subjected to verbal harassment and threats by the Defendant. Plaintiff was called derogatory names such as Camel Jockey, Sand Nigger, Baghdad Bob, Iraqi Dog Shit, and Saddam's Boy Toy. Plaintiff claims that the purpose of such statements was to harass and degrade him. Claims of abusive language and general harassment do not state a claim under the Eighth Amendment or the substantive due process clause. *Ivey v. Wilson*, 832 F.2d 950 (6th Cir. 1987); *Ishaaq v. Compton*, 900 F. Supp. 935, 944 (W.D. Tenn. 1995); *Meadows v. Gibson*, 855 F. Supp. 223, 225 (W.D. Tenn. 1994).

The Sixth Circuit has held that a pattern of racial harassment involving racial slurs may violate the Equal Protection Clause. *Knop v. Johnson*, 977 F.2d 996, 1013-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 973 (1993). However, the use of racial slurs, without harassment or some other conduct that deprives the victim of established rights, fails to state a claim for violation of the

Equal Protection Clause. *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999); *Williams v. Kaufman County*, 86 F. Supp. 2d 586, 598 (N.D. TX, Feb. 7, 2000); *Oliver v. Cuttler*, 968 F. Supp. 83, 88 (E.D. N.Y., May 24, 1997). Viewing the available evidence in a light most favorable to the non-movant, it seems that Defendant's behavior went beyond the mere use of racially degrading language and into the realm of harassment.

Defendant used racially degrading language against Plaintiff repeatedly and for a time span of at least six months, between the dates of October 23, 2004, and April 23, 2005. Defendant also told Plaintiff to kill himself for being Iraqi, and as a result of Defendant's actions Plaintiff attempted suicide on multiple occasions. Finally and perhaps most seriously, Defendant threatened to poison Plaintiff, leading Plaintiff to fear for his health and refuse food served by Defendant. In the course of these threats, Defendant intentionally coughed on Plaintiff's food within plain view of Plaintiff. Such behavior is entirely malicious, and has no possible penological justification. Courts have been more willing to deny a motion for summary judgment with respect to an equal protection violation if the alleged conduct could not be motivated by a legitimate penological or law enforcement purpose. *Williams v. Bramer*, 180 F.3d 699, 704-705 (5th Cir. 1999).

Plaintiff's allegations of Defendant's threatening behavior are also corroborated by another prisoner. Defendant claims that this witness is not credible and could not have observed what he claims to have observed from his vantage point in his cell. It is not appropriate for the Court to weigh evidence for the purpose of ruling on a motion for summary judgment. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999). Moreover, an affidavit by a prisoner explicitly contradicting the defendant's version of the facts, when the facts may support an Eighth Amendment claim, raises genuine issues preventing the issuance of summary judgment. *Moore v. Holbrook*, 2

F.3d 697, 701-702 (6th Cir. 1993). It is my opinion that Defendant's conduct rises to the level of harassment necessary to state a claim under the Eighth Amendment. It is therefore my recommendation that Defendant's motion for summary judgment be denied with respect to this claim.

Plaintiff's claim also states other harassment by the Defendant. Specifically, this behavior includes destroying Plaintiff's legal papers and documents, along with other personal documentation in retaliation for Plaintiff's repeated filing of grievances against Defendant. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X*, 175 F.3d at 394, *1037. In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Regarding the first prong of the *Thaddeus-X* test, Plaintiff was engaged in protected conduct. The filing of a prison grievance is constitutionally-protected conduct for which a prisoner cannot be retaliated against. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). However, Plaintiff fails to establish sufficient facts to satisfy the second prong of the test. Defendant has offered evidence, in the form

of prison logs, that he did not conduct a shakedown of Plaintiff's cell on the date claimed by Plaintiff. Defendant does concede that he has conducted shakedowns of Plaintiff's cell in the past, but did nothing more than stow Plaintiff's personal possessions in his foot locker as per prison policy. Plaintiff has not made any showing of evidence to the contrary. Thus, it is my recommendation that Defendant's motion for summary judgment be granted with respect to Plaintiff's claim of destruction of property in retaliation for exercising his rights.

Finally, Plaintiff claims that he was denied access to the typing room by Defendant. This is essentially a First Amendment claim that Plaintiff was unconstitutionally barred from access to the courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1, 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992), *cert. denied*, 507 U.S. 973 (1993); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, at *1-2 (6th Cir. Nov. 12, 1997). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v.*

*Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis,* 116 S. Ct. at 2180; *Talley-Bey,* 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes,* 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994).

In this case, Plaintiff makes no claim that he suffered any actual legal prejudice or injury. He does not claim that he was denied pen and paper or other essentials, that any document he submitted to a court was rejected, or that any legal ruling was erroneously decided against him. Nor does he make these claims with respect to the alleged destruction of his legal papers addressed earlier. Thus, he has not shown any actual injury arising from his denial of access to the typewriter room. Moreover, prison logs show that Plaintiff was scheduled to use the typewriter room, and Plaintiff offers no other evidence to dispute this. It is my recommendation that Defendant's motion for summary judgment be granted with respect to this claim.

Defendant also raises the defense of qualified immunity for his actions. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used

to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v Mehra*, 186 F.3d 685, 690.

When determining whether a right is clearly established, this Court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, at 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, at 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990) (a correctional officer who observes an unlawful beating may be liable under Section 1983

even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d at 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983) (police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Id*. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).

In this case, Plaintiff has stated a claim upon which relief can be granted. Racial discrimination and harassment in such a manner as claimed does violate the Equal Protection Clause of the Fourteenth Amendment. Next, the Court should determine whether or not that right was clearly established. I recommend that the Court find that it has been clearly established. A reasonable person in the position of the Defendant would have to know that racial discrimination and harassment violates a prisoner's rights under the Equal Protection Clause of the Fourteenth Amendment. These rights are implied in two MDOC policy directives. Directive 03.03.130-L states that "Discrimination based on personal prejudices as to race, religion, color, national origin, age, sex, height, weight, marital status, or disability is prohibited." Directive 03.03.130-K, in part, prohibits "willful infliction of mental distress, degradation or humiliation." Though it is not the realm of

federal courts to enforce or interpret prison directives, these directives serve to clearly establish, in the minds of prison staff and officials, the constitutionally protected rights of prisoners. Finally, the Court should determine that Defendant's conduct was objectively unreasonable in light of the circumstances. There was no penological justification for Defendant's actions. Defendant's suggestions that Plaintiff kill himself and his threats to poison Plaintiff's food could not have been motivated by any safety concern. Thus, I recommend that the Court find that Defendant does not have qualified immunity for the claims relating to repeated verbal racial harassment, threats to poison Plaintiff, or admonishing Plaintiff to kill himself because he is Iraqi.

Defendant should, however, receive qualified immunity against Plaintiff's other claims. Defendant's conduct in shutting off water to Plaintiff's cell was not objectively unreasonable in light of the circumstances. Plaintiff was threatening to damage the sprinkler head and flood his cell. Evidence to this effect has been offered by the Defendant, and Plaintiff has not countered this evidence in his response. I recommend that the court find that Defendant does have qualified immunity for the claim relating to shutting off water to Plaintiff's cell. I recommend that Defendant be given qualified immunity for any claim relating to cell shakedowns as well, since stowing Plaintiff's papers during a cell shakedown has a legitimate purpose and is not objectively unreasonable.

For the above-mentioned reasons, I recommend that Defendant's motion for summary judgment (Docket #10) be granted in part and denied in part. Specifically, it is recommended that all of Plaintiff's claims be dismissed, with the exception of Plaintiff's equal protection claim.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within 10 days of receipt of this

Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3.  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   July 28, 2006