UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MITHAQ AL HUMRANI ,

    Plaintiff,

v.                                                        Case No. 2:05-cv-203
                                                            HON. ROBERT HOLMES BELL

RUDOLPH KLEEMAN,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Mithaq Al Humrani, an inmate currently confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Corrections Officer Rudolph Kleeman. Plaintiff's complaint alleges that he was born in Iraq. Plaintiff claims that Defendant is violating his right to equal protection by depriving him of clothing, ventilation, heat, a balanced diet, and hygiene supplies on the basis of his race. Plaintiff claims that Defendant's actions violated his Fourteenth Amendment equal protection rights. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

Presently before the Court is Defendant's Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

According to the record, Plaintiff was born in Basra, Iraq. Plaintiff came to the United States in 1996 after working with the opposition to overthrow Saddam Hussein. Plaintiff became incarcerated in the MDOC in May 2000 and Defendant Kleeman came to work in Plaintiff's housing unit sometime in 2004. Plaintiff claims that on October 23, 2004, Defendant came to his

cell and shut off his water. Defendant then began harassing Plaintiff, and calling for him to kill himself because he hates what Iraqis are doing to American soldiers in Iraq. Defendant issued a misconduct report on October 24, 2004, for which Plaintiff was found guilty. Plaintiff concedes that the misconduct report was for pulling the fire alarm and that his water was shut off as a result of this misconduct. (*See* Defendant's Exhibit A, "Deposition of Plaintiff," p. 7.)

In Plaintiff's complaint, he asserts that he attempted to kill himself numerous times beginning in November of 2004. However, Defendant notes that according to Plaintiff's medical and psychological records, Plaintiff did not attempt suicide between August 1, 2004, when Defendant first came into contact with Plaintiff, and August 23, 2005, when Plaintiff filed this lawsuit. (*See* Defendant's Exhibit B, Affidavit of Paul Eyke, M.S.)

Plaintiff claims that on April 23, 2005, Defendant called him a "camel jockey" and other racially derogatory names. On May 2, 2005, Defendant allegedly destroyed Plaintiff's legal property, as well as his books and non-legal personal items. On May 8, 2005, Plaintiff gave Defendant a kite requesting time in the segregation typing room, but Defendant did not turn the kite over to prison officials. On May 18, 2005, Defendant again called Plaintiff a "Camel Jockey, Sand Nigger, Iraqi Dog Shit, Baghdad Bob, and Saddam's Boy Toy." Defendant told Plaintiff that he hated "sand niggers" and coughed in Plaintiff's food tray. Defendant also told Plaintiff that he would poison Plaintiff's food. Plaintiff filed multiple grievances on Defendant raising the above issues, which were denied at all steps.

In his response to the motion for summary judgment, Plaintiff claims that the unlawful harassment has continued and that on March 9, 2007, Defendant again referred to Plaintiff as a "camel jockey," and threatened Plaintiff, encouraging him to kill himself. On May 23, 2007,

Defendant again called Plaintiff racially derogatory names and encouraged Plaintiff to kill himself. On June 24, 2007, Defendant called Plaintiff an "Arab bitch" and called him other racist names and made inappropriate sexual comments to Plaintiff. In addition, Defendant has used the intercom system in the prison to call Plaintiff derogatory names, and this conduct has been witnessed by other prisoners. Plaintiff includes the affidavits of prisoners Ogle and Kalasho in support of this assertion. (*See* Exhibit 10 of Plaintiff's response.) Plaintiff states that he filed grievances regarding these incidents, which were denied at each step.

Defendant filed a motion for summary judgment on December 8, 2005. On August 31, 2006, the court granted Defendant's motion for summary judgment with regard to all claims except for Plaintiff's equal protection claim (docket #22).

Defendant has now filed the instant motion for summary judgment, in which he claims that he is entitled to summary judgment because Plaintiff has not shown a violation of his Fourteenth Amendment right to equal protection. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976).

As noted above, Plaintiff asserts that Defendant harassed him by calling him racist derogatory names, spitting in his food on one occasion, threatening to poison his food, and repeatedly encouraging him to commit suicide. Defendant states that he is entitled to summary

judgment because such conduct does not rise to the level of a constitutional violation. As noted in the report and recommendation addressing Defendant's first motion for summary judgment (docket #17) Defendant used racially degrading language against Plaintiff repeatedly and for a time span of at least six months, between the dates of October 23, 2004, and April 23, 2005. Defendant also told Plaintiff to kill himself for being Iraqi, and as a result of Defendant's actions Plaintiff attempted suicide on multiple occasions. Finally and perhaps most seriously, Defendant threatened to poison Plaintiff, leading Plaintiff to fear for his health and refuse food served by Defendant. In the course of these threats, Defendant intentionally coughed on Plaintiff's food within plain view of Plaintiff. Such behavior is entirely malicious, and has no possible penological justification. Courts have been more willing to deny a motion for summary judgment with respect to an equal protection violation if the alleged conduct could not be motivated by a legitimate penological or law enforcement purpose. *Williams v. Bramer*, 180 F.3d 699, 704-705 (5th Cir. 1999).

Plaintiff's allegations of Defendant's threatening behavior are also corroborated by another prisoner. The determination of whether this witness is credible and is a question of fact. It is not appropriate for the Court to weigh evidence for the purpose of ruling on a motion for summary judgment. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999). Moreover, an affidavit by a prisoner explicitly contradicting the defendant's version of the facts, when the facts may support an constitutional violation, raises genuine issues preventing the issuance of summary judgment. *Moore v. Holbrook*, 2 F.3d 697, 701-702 (6th Cir. 1993). In the opinion of the undersigned, there is a genuine issue of material fact regarding Plaintiff's equal protection claim against Defendant. It is therefore my recommendation that Defendant's motion for summary judgment be denied with respect to this claim.

Defendant also states that he is entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v Mehra*, 186 F.3d 685, 690.

When determining whether a right is clearly established, this Court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, at 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, at 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours

of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990) (a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d at 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983) (police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Id*. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).

In this case, Plaintiff has stated a claim upon which relief can be granted. Racial discrimination and harassment in such a manner as claimed does violate the Equal Protection Clause

of the Fourteenth Amendment. Next, the Court should determine whether or not that right was clearly established. I recommend that the Court find that it has been clearly established. A reasonable person in the position of the Defendant would have to know that racial discrimination and harassment violates a prisoner's rights under the Equal Protection Clause of the Fourteenth Amendment. These rights are implied in two MDOC policy directives. Directive 03.03.130-L states that "Discrimination based on personal prejudices as to race, religion, color, national origin, age, sex, height, weight, marital status, or disability is prohibited." Directive 03.03.130-K, in part, prohibits "willful infliction of mental distress, degradation or humiliation." Though it is not the realm of federal courts to enforce or interpret prison directives, these directives serve to clearly establish, in the minds of prison staff and officials, the constitutionally protected rights of prisoners. Finally, the Court should determine that Defendant's conduct was objectively unreasonable in light of the circumstances. There was no penological justification for Defendant's actions. Defendant's suggestions that Plaintiff kill himself and his threats to poison Plaintiff's food could not have been motivated by any safety concern. Thus, I recommend that the Court find that Defendant does not have qualified immunity for the claims relating to repeated verbal racial harassment, threats to poison Plaintiff, or admonishing Plaintiff to kill himself because he is Iraqi.

In summary, in the opinion of the undersigned, Plaintiff has sustained his burden of proof in response to Defendant's motion for summary judgment. Accordingly, it is recommended that Defendant's Motion for Summary Judgment (Docket #102) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

       /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated:   February 27, 2008